**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0677-24

DAVID S. SCARLETT,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF MILITARY AND VETERANS'
AFFAIRS,

     Respondent.

_____

        Submitted December 17, 2025 – Decided January 23, 2026

        Before Judges Gummer and Vanek.

        On appeal from the State of New Jersey, Department of Military and Veterans' Affairs.

        Troutman Pepper Locke LLP, attorneys for appellant (Keith M. Menscher, on the briefs).

        Matthew J. Platkin, Attorney General, attorney for respondent (Christopher Weber, Assistant Attorney General, of counsel; Ryne A. Spengler, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner David S. Scarlett appeals from a final agency decision by the Department of Military and Veterans Affairs (DMVA) denying his application for veterans' status under N.J.S.A. 43:16A-11.7 and N.J.A.C. 5A:9-1.2, which permit veterans of certain enumerated military conflicts to receive state pension benefits.

The DMVA found Scarlett's stateside service as a Survival, Evasion, Resistance, and Escape (SERE) instructor did not constitute service "in a theatre of operation" or "in direct support" of Operation Enduring Freedom (OEF), as defined in N.J.S.A. 43:16A-11.7, which is the governing statute. The DMVA also found Scarlett's service-connected disability did not satisfy N.J.A.C. 5A:9-1.2(a) or the regulatory exception under N.J.A.C. 5A:9-1.2(b)—which relaxes the time-in-service and medal-receipt requirements of N.J.A.C. 5A:9-1.2(a)— because his injury did not occur in a designated combat zone or while he was performing qualifying operational service. Because the DMVA's final agency decision denying Scarlett's application was not arbitrary, capricious, or unreasonable, we affirm.

I.

In January 2024, Scarlett filed an application with the DMVA to be deemed a veteran for pension-preference purposes under N.J.A.C. 5A:9-1.2.

2                                                                                    A-0677-24

Scarlett's application stated he had served on active duty in the United States Air Force from May 13, 2008, through May 28, 2017, when he received an honorable discharge. His service records showed that he had worked domestically as a SERE instructor, preparing service members for deployment.

The DMVA denied Scarlett's application on February 6, 2024. The agency concluded that Scarlett had not served within a designated area of operation during a named military conflict as required to receive state pension benefits.

Scarlett appealed the denial, arguing his position as a stateside SERE instructor qualified as service "in a theatre of operation" and "in direct support" of Operation Enduring Freedom (OEF) under N.J.S.A. 43:16A-11.7. Scarlett asserted his role training elite military personnel for deployment—certifying their readiness and engaging in combat-simulation activities—placed him squarely within these definitions, despite not having been deployed abroad.[1]

Scarlett further contended that he qualified for veterans' preference under N.J.A.C. 5A:9-1.2(b), which exempts an applicant with a service-connected

---

[1]  It is unclear from the record whether Scarlett trained personnel who were deployed in OEF, but Scarlett maintains on appeal he "experienced the hazards of combat to ensure those being sent to a theater of operation were prepared for same."

injury or disability from certain requirements under subsection (a) of N.J.A.C. 5A:9-1.2. Scarlett emphasized that he had been honorably discharged, possessed a service-connected disability recognized by the DMVA, and performed SERE duties that constituted service in direct support of OEF. Scarlett asserted these factors together entitled him to veterans' preference for pension purposes.

The Veterans Benefits Bureau forwarded his appeal to the Adjutant General and the Veterans Preference Appeals Board (the Board). The Board recommended denying the appeal after reviewing the record, which included Scarlett's Certificate of Release or Discharge from Active Duty (DD-214) and materials from the DMVA regarding his eligibility for various tax and benefit programs.

On May 14, 2024, the Adjutant General accepted the Board's recommendation and issued a final agency decision finding Scarlett had not served in a combat zone or in direct support of OEF; his DD-214 evidenced he had received the Global War on Terrorism Service Medal but not the Afghanistan Campaign Medal or the Global War on Terrorism Expeditionary Medal, which are the campaign-specific medals applicants can use to demonstrate qualifying service under N.J.A.C. 5A:9-1.2(a)(10); and he had not

been deployed to foreign service. The Adjutant General recognized the Global War on Terrorism Service Medal "is awarded to those serving in support roles outside the Area of Engagement."

The Adjutant General distinguished Wellington v. Hillsborough Township, 27 N.J. Tax 37 (Tax 2012), and Galloway Township v. Duncan, 29 N.J. Tax 520 (Tax 2016), finding those cases interpreted a different statute and were not dispositive given our holding in Fisher v. City of Millville, where we concluded that "service in a theater of operation" did not include stateside service. 450 N.J. Super. 610, 618-19 (App. Div. 2017).

## II.

Scarlett argues that the DMVA misapplied the statutory and regulatory criteria governing veterans' pension preference by narrowly interpreting the phrases "in a theatre of operation" and "in direct support" of OEF contained in N.J.S.A. 43:16A-11.7 to deny his application. He asserts that his duties as a stateside SERE instructor constituted integral support to deployed forces and, therefore, satisfy the definitions in subsection (a) of N.J.A.C. 5A:9-1.2, and that his service-connected disability entitles him to veterans' status under subsection (b) regardless of the location of his service.

A-0677-24

After our review of the record and prevailing law, we discern nothing arbitrary, capricious, or unreasonable in the DMVA's denial of Scarlett's application under N.J.S.A. 43:16A-11.7 and N.J.A.C. 5A:9-1.2.

A.

The firmly established scope of our review of a final agency decision is limited. Commc'ns Workers of Am., AFL-CIO v. N.J. Civ. Serv. Comm'n, 234 N.J. 483, 515 (2018). An agency's decision will not be reversed unless "(1) it was arbitrary, capricious, or unreasonable; (2) it violated express or implied legislative policies; (3) it offended the State or Federal Constitution; or (4) the findings on which it was based were not supported by substantial, credible evidence in the record." Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Env't Prot., 191 N.J. 38, 48 (2007) (citing In re Taylor, 158 N.J. 644, 656 (1999)).

Courts generally "afford substantial deference to an agency's interpretation of a statute that it is charged with enforcing." Ibid. (citing R & R Mktg., LLC v. Brown-Forman Corp., 158 N.J. 170, 175 (1999)). "'[A] strong presumption of reasonableness' attends an agency's exercise of its statutorily delegated duties, which 'is even stronger when the agency has delegated discretion to determine the technical and special procedures to accomplish its

6

task.'" Caporusso v. N.J. Dep't of Health & Senior Servs., 434 N.J. Super. 88, 103 (App. Div. 2014) (alteration in original) (quoting In re Holy Name Hosp., 301 N.J. Super. 282, 295 (App. Div. 1997)).

"As long as the agency decision is contemplated under its enabling legislation, the action must be accorded a presumption of validity and regularity." A.M.S. ex rel. A.D.S. v. Bd. of Educ., 409 N.J. Super. 149, 159 (App. Div. 2009). An appellate court, however, is not "bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Ibid. (quoting In re Taylor, 158 N.J. at 658).

B.

Applying the statutory framework and our required deferential standard of review, the record supports the DMVA's determination that Scarlett did not serve in a statutorily designated area of operation of an enumerated military conflict and did not incur his injury while engaged in qualifying service. Accordingly, the agency's denial of Scarlett's application under N.J.A.C. 5A:9-1.2(a) was not arbitrary, capricious, or contrary to legislative policy.

A-0677-24

The DMVA's determination of veterans' status for pension preference is governed by N.J.S.A. 43:16A-11.7 and N.J.A.C. 5A:9-1.2.[2] Scarlett asserted he qualified as a veteran under N.J.S.A. 43:16A-11.7 through his service in the OEF.

For applicants seeking veterans' status for service in OEF, N.J.S.A. 43:16A-11.7(21) (the OEF subsection) requires they demonstrate (1) service "in a theatre of operation" designated by the President of the United States or the Secretary of Defense, and (2) service "in direct support" of that operation, for at least fourteen days, unless otherwise exempted. An applicant demonstrates qualifying service through proof of deployment to a designated combat zone or receipt of campaign-specific medals, such as the Global War on Terrorism Expeditionary Medal or the Afghanistan Campaign Medal. N.J.A.C. 5A:9-1.2(a)(10). The DMVA, through the Adjutant General, has exclusive authority to determine whether an applicant satisfies the statutory criteria. N.J.S.A. 43:16A-11.7a.

---

[2] N.J.A.C. 5A:9-1.4(e) directs an applicant seeking veterans' status in the Police and Firemen's Retirement System to submit an "Application for Veteran Status Designation For Pension" to the DMVA. N.J.A.C. 5A:9-1.2 then provides the criteria which govern the DMVA's determination of the applicant's status under N.J.S.A. 43:16A-11.7.

Here, the Adjutant General determined that Scarlett did not satisfy the geographic and operational requirements imposed by the OEF subsection. The DMVA found no evidence Scarlett had served in a designated area of operation or had received any of the campaign medals that signify such service. In Fisher, we rejected a broad interpretation of a property tax exemption statute, concluding that the "plaintiff's injury experienced in a fall during her . . . basic training . . . [does not] satisfy the statutory requisites of service 'in a theater of operations and in direct support of that operation.'" 450 N.J. Super. at 619 (quoting N.J.S.A. 54:4-8.10(a)). We are unconvinced by Scarlett's reliance on the broader interpretations of "theatre of operation" and "direct support" referenced by the Tax Court in Wellington and Galloway, as those decisions also arose in the property-tax exemption context and are not binding on the DMVA's application of the separate statutory and regulatory criteria governing what entitles an applicant to veterans' status for pension purposes.

We are unpersuaded the DMVA's interpretation disregards the statute's plain language and is contrary to underlying legislative intent. When interpreting statutes, "[i]f the text's plain meaning is clear and unambiguous, 'we apply the law as written.'" Keyworth v. CareOne at Madison Ave., 258 N.J. 359, 379 (2024) (quoting State v. J.V., 242 N.J. 432, 443 (2020)). The DMVA's

interpretation simply implements the terms "in a theatre of operation" and "in direct support." Thus, we consider the geographic limitations the DMVA placed on these terms supported by the statutory language.

Aside from their plain meaning—which supports the DMVA's interpretation—the presence of these terms in the OEF subsection is noteworthy because they are absent from earlier subsections. "[W]hen the Legislature includes limiting language in one part of a statute, but leaves it out of another section in which the limit could have been included, we infer that the omission was intentional." Ryan v. Renny, 203 N.J. 37, 58 (2010). Thus, while there is no requirement that a service member have served "in a theatre of operation" to qualify under the subsection applicable to veterans of World War II, see N.J.S.A. 43:16A-11.7(10), the presence of this geographic condition in the OEF subsection evinces the Legislature's intent to more narrowly circumscribe the types of duties that qualify service members for veterans' status based on OEF service.

Applying the required deferential standard of review, we conclude the DMVA's denial of Scarlett's application under subsection (a) of N.J.A.C. 5A:9-1.2 was not arbitrary, capricious, or unreasonable.

A-0677-24

C.

Scarlett argues in the alternative that he qualifies for veterans' status under N.J.A.C. 5A:9-1.2(b), which provides a limited exception for applicants who incurred a service-connected injury or disability while serving in the theatre of operation of an enumerated conflict. Subsection (b) provides in relevant part:

> (b) Any person receiving an actual service-connected injury or disability shall be classed as a veteran:
>
> 1. Whether or not that person has completed the required length of service in (a) above;
>
> 2. In the case of [the OEF subsection] above, regardless of receipt of the Global War on Terrorism Expeditionary Medal.
>
> [N.J.A.C. 5A:9-1.2(b).]

Subsection (b) omits two requirements included in subsection (a): (1) the minimum days of service; and (2) the receipt of designated campaign medals.

Scarlett asserts that his service-connected disability entitles him to veterans' status without regard to the location or nature of his service. But N.J.A.C. 5A:9-1.2(b) does not eliminate the requirement that the injury be incurred while serving in the theatre of an enumerated conflict; rather, it omits only the time-in-service and medal-receipt requirements applicable under subsection (a). Thus, the DMVA's finding that Scarlett did not qualify for

11

veterans' status under subsection (a) because he had not served "in a theatre of operation" similarly precludes Scarlett from qualifying under subsection (b).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

12